**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | |
|---|---|
| TOM DEVORE, | |
| Plaintiff, | |
| v. | Case No. 2:19-cv-04063-NKL |
| PROGRESSIVE CASUALTY INSURANCECOMPANY, | |
| Defendant. | |

## ORDER

Defendant Progressive Casualty Insurance Company moves to dismiss, for failure to state a claim, Count II in the amended complaint by plaintiff Tom Devore. For the reasons discussed below, the motion to dismiss is denied.

## I.  ALLEGED FACTS

In the early morning of June 27, 2015, Devore, who owned a tow-truck company, was dispatched to Highway 63 in Boone County to remove a disabled vehicle. First Amended Complaint, Doc. 12, ¶¶ 8-9. He found the disabled vehicle facing north on the right shoulder of the northbound lanes of Highway 63, just over the crest of a hill. *Id.*, ¶ 10. Devore decided to connect the rear of the north-facing disabled vehicle to the rear of his tow truck, which left his tow truck facing south on the northbound shoulder. *Id.*, ¶ 11. After connecting his truck to the disabled vehicle, Devore attempted to execute a three-point turn on northbound US 63 so that he could proceed north. *Id.*, ¶ 12. As he was executing the three-point turn, his tow truck and the disabled vehicle blocked the northbound lanes of Highway 65, just past the crest of a hill. *Id.*, ¶ 13. At the same time, Mallory Embree was proceeding northbound on Highway 63. *Id.*, ¶ 14. She crested the hill at highway speed and struck the disabled vehicle attached to Devore's truck. *Id.*

As a result of the collision, a passenger in Embree's vehicle, Alexander Wiesner, suffered life-threatening injuries, including a torn thoracic aorta, various organ lacerations, and a comminuted bilateral nasal bone fracture. *Id.,* ¶ 16. Wiesner was rushed to the hospital and underwent surgeries to repair his torn aorta and nasal bone fractures. *Id.*, ¶ 17.

The highway patrol officer who responded to the collision noted that Devore's improper turn and improper lane usage were contributing causes of the accident. *Id..,* ¶ 18. The officer noted no contributing causes on the part of Embree. *Id.*, ¶ 19.

Devore notified Progressive of the accident. *Id.*, ¶ 25. As of June 27, 2014, Progressive insured Devore and his tow truck company under a policy of automobile liability insurance with a combined single limit of $300,000. *Id..,* ¶¶ 20-21. Progressive promised to "pay damages . . . for bodily injury . . . for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of [an] insured auto." *Id..,* ¶ 22. Progressive also reserved the exclusive right to defend and settle any claims asserted against Devore. *Id.*, ¶ 23. The policy provided that Progressive's defense and settlement duties would end only "after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements." *Id.*, ¶ 24. There is no dispute as to coverage in this case.

On or about July 11, 2014, Wiesner notified Progressive that he was asserting a claim against Devore, enclosing a copy of the Missouri Highway Patrol Crash Report and medical records describing his life-threatening injuries, and requested that Progressive pay its policy limit in settlement on Devore's behalf no later than July 21, 2014. *Id.*, ¶ 26. Progressive did not accept that settlement offer, nor did it respond with a different offer.

On July 23, 2014, Wiesner filed suit against Devore and Embree, claiming that Devore's and Embree's negligence caused him massive heart and body trauma and physical and emotional suffering. *Id.*, ¶ 32.

The same day, Progressive's claims adjuster said to Wiesner's attorney of Wiesner's claim, "It's a big case . . . . It will bring big money in. That should make you smile." *Id.*, ¶ 31. The same claims adjuster had texted Wiesner's attorney the prior week that she was his "favorite" because she "give[s] [him] money." *Id.*

By January 15, 2015, Progressive's investigation allegedly had revealed that Devore was responsible for the collision and it knew that Devore faced the possibility of an excess judgment. *Id.*, ¶¶ 36-37. By February 3, 2015, Wiesner's medical bills for injuries caused in the collision exceeded $250,00. *Id.*, ¶¶ 40. Nonetheless, even after these dates, Progressive rejected Wiesner's counsel's offer to settle the claim at the policy limit and instead offered only sums ranging from $91,650 to $150,000. *Id.*, ¶¶ 38-47.

Ultimately, judgment was entered against Devore in the amount of $793,797.74, which exceeded the policy limit by $493,797.74. *Id.*, ¶ 65.

## II.  STANDARD

A complaint must contain allegations showing the material elements to recover "under a viable theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). However, generally, a plaintiff is not required "to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff

is entitled to relief." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam)).

On a motion to dismiss, the Court accepts all factual allegations as true. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

III.    **DISCUSSION**

Devore asserts two claims, one for bad faith failure to settle a claim (Count I), and another for breach of fiduciary duty (Count II).

There is no dispute that each claim is separately cognizable in Missouri. *See Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 827 (Mo. 2014) ("[A] bad faith refusal to settle action will lie when a liability insurer:  (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy."); *Grewell v. State Farm Mut. Auto. Ins. Co.*, 162 S.W.3d 503, 509 (Mo. Ct. App. 2005) (finding that Missouri recognizes a fiduciary relationship between insurer and insured).

Nonetheless, Progressive argues that Devore's allegations concerning breach of fiduciary duty are duplicative of the bad-faith-failure-to-settle claim and sound in breach of a "contractual duty to settle" and therefore should be dismissed. *See* Doc. 16 (Progressive's Motion to Partially Dismiss Plaintiff's First Amended Complaint and Suggestions in Support), p. 4.  Progressive claims that, to attempt to state a claim for breach of fiduciary duty, Devore "simply adds verbiage explaining how Progressive breached its fiduciary duties *by allegedly failing to settle the Wiesner claim asserted against Plaintiff*." *Id.*  Progressive relies on the Court's decision in *Cincinatti Ins. Co. v. Mo. Highways*, No. 12-1484-NKL, 2013 WL 12097460 (W.D. Mo. Nov. 4, 2013) to argue for dismissal of the claim for breach of fiduciary duty.

4

*Cincinnati* is distinguishable. As a preliminary matter, here, in contrast with *Cincinnati*, Progressive did not deny coverage, so no breach-of-contract claim is at issue. Furthermore, in *Cincinnati*, the only allegations were that the insurer denied coverage, failed to investigate, and failed to settle the case within the policy limits. *Id.*, at \*4 ("The only specific misconduct on the part of Cincinnati alleged by MHTC is 'fail[ing] to properly investigate the claim and failing to settle the case within the policy limits.'") The allegations were not only conclusory, but also duplicative of the other claims asserted. *See id.* ("To the extent MHTC's claim for breach of fiduciary duty is based on Cincinnati's failure to settle, this claim is redundant with MHTC's fourth counterclaim for failure to settle and subject to dismissal under Rule 12(f)."); *id.* ("[D]enial of coverage is the only harm MHTC claims to have suffered as a result of Cincinnati's alleged failure to investigate. . . . Consequently, MHTC's breach of fiduciary duty claim is not based on 'conduct quite distinct from conduct that merely constituted a breach of contract.'").

In contrast, the allegations here are neither conclusory nor duplicative of those underlying the bad-faith-failure-to-settle claim. Devore alleges that the primary claims adjuster Progressive assigned to his claim told Wiesner's attorney in text messages (which would not appear in the formal claims file) that Wiesner's claim against Devore constituted "a big case" that "will bring big money in" and "should make [him] smile." Doc. 12, ¶ 31. A fact-finder could reasonably conclude that Progressive's primary claims adjuster effectively told Wiesner's attorney that he and his client would receive a substantial sum of money, possibly up to or exceeding the policy limits. Progressive points out that Wiesner's attorney responded, "That's good to know. There must be a policy limit with a whole bunch of zeroes in it!" Progressive argues that this language "undermines Plaintiff's allegation that the adjuster's alleged statement induced counsel to believe the claim was valued in excess of Plaintiff's policy limit or that Progressive would pay more than its policy limit

to resolve the case." This argument misses the mark. Wiesner's attorney's response could reasonably be understood as demonstrating that the claims adjuster's text messages led him to believe that Progressive had assessed the case as having a monetary value close to, if not above, the policy limit. In effect, the claims adjuster showed Wiesner's counsel Progressive's hand, and Progressive—and by extension Devore—thereby lost valuable bargaining power. Such communications by an agent of Progressive, which as a matter of law owed a fiduciary duty to Devore with respect to his claims, to Wiesner's lawyer, who was adverse to Devore in the matter, could reasonably be found to constitute a breach of fiduciary duty.

This alleged conduct is distinct from the alleged conduct that forms the basis for the bad-faith-refusal-to-settle claim—the allegations that Progressive knew, almost immediately after the collision occurred, that Devore was responsible for the collision and that he faced the possibility of an excess judgment and it therefore was in his best interests to settle the case within the limits, but that Progressive nonetheless refused multiple times to settle the claims against Devore within the policy limits. *See, generally*, Doc. 12.

The fact that both sets of allegations imply "that the insurance company disregarded the financial interest of the insured in favor of its own," as Progressive argues (Doc. 16, p. 5), is of no matter. The fact that an insurer might in bad faith have refused to settle a claim does not make the insurer immune to the accusation that it *separately* breached a fiduciary duty to the insured, just as a corporate director could be held liable for both conversion and breach of fiduciary duty. Each claim is a separate cause of action that, if plausibly supported by the allegations in the pleading, can be pursued simultaneously. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative . . . ."). Devore's complaint plausibly alleges that Progressive's primary claims

adjuster improperly told Wiesner's counsel that Wiesner's case against Devore would win the attorney a large amount of money from Progressive (the breach of fiduciary duty claim), which led Wiesner's attorney to demand the policy limits at the outset, and that, simultaneously but separately, Progressive, despite believing that the case against Devore was likely to reach or exceed the policy limit, refused to settle the case at that limit (the bad-faith-failure-to-settle claim), leaving Devore with an excess judgment. The claim for breach of fiduciary duty thus is not redundant and does not sound in contract.

## IV. CONCLUSION

For the reasons discussed above, Progressive's motion to dismiss Count II is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 2, 2019
Jefferson City, Missouri